# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Stacey D. Adams |
| v. | : | Mag. No. 25-15142 |
| TERRANCE HART | : | **CRIMINAL COMPLAINT** |

I, Brian Johnson, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

## SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_____
Special Agent Brian Johnson
Federal Bureau of Investigation

Special Agent Johnson attested to this Complaint by telephone pursuant to FRCP 4.1(b)(2)(A).

Sworn to and subscribed via telephone, this 5th day of June, 2025

NEW JERSEY
State

HONORABLE STACEY D. ADAMS
UNITED STATES MAGISTRATE JUDGE

_Stacey D. Adams_ /scj
Signature of Judicial Officer

## ATTACHMENT A

### COUNT ONE
### (Wire Fraud)

From in or around April 2023 through in or around July 2023, in Bergen County, in the District of New Jersey and elsewhere, defendant

### TERRANCE HART

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, to wit, a wire transmission sent on or about June 21, 2023, between a location inside of New Jersey and a location outside of New Jersey.

In violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNT TWO
### (Aggravated Identity Theft)

On or about April 28, 2023, in the District of New Jersey and elsewhere, defendant

**TERRANCE HART**

knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, specifically the name of the individual used to open Bank Account-4, as described herein.

In violation of Title 18, United States Code, Section 1028A(a)(1) and Section 2.

## COUNT THREE
## (TAX FRAUD)

From in or around April 2021 through in or around June 2022, in the District of New Jersey and elsewhere, defendant

**TERRANCE HART**

knowingly and intentionally conspired and agreed with others to defraud the United States and any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim.

In violation of Title 18, United States Code, Section 286.

## ATTACHMENT B

I, Brian Johnson, a Special Agent with the Federal Bureau of Investigation ("FBI"), having personally participated in an investigation of the conduct of defendant TERRANCE HART ("HART"), and having spoken with other law enforcement officers and individuals and reviewed documents, have knowledge of the following facts. Because this Complaint is submitted for the limited purpose of establishing probable cause, I have not included all facts known to me concerning this investigation. The contents of documents and the actions, statements, and conversations of individuals referenced below are provided in substance and in part, unless otherwise indicated.

**Background**

1. At all times relevant to this Complaint:

    a. TERRANCE HART was a resident of Hackensack, New Jersey.

    b. Employment taxes were required to be reported to the Internal Revenue Service by an employer on a Form 941, Employer's Quarterly Federal Tax Return ("Form 941"). As explained on the Form 941, if the total deposits by the employer for a given quarter exceeded the total taxes due for that quarter, the employer could request a refund.

**TREASURY CHECK-1**

2. On or about July 14, 2023, a bank account ("Bank Account-1") was opened at a bank ("Bank-1"). On that same date, a United States Treasury Check in the amount of $217,273.23 ("Check-1") was deposited into Bank Account-1. The only other deposits into Bank Account-1 totaled approximately $100.

3. Approximately $42,000 was thereafter withdrawn from Bank Account-1 at Bank-1. Approximately $22,000 of the withdrawals were done through a Cash App Account subscribed to by HART (the "HART Cash App Account").

4. Records obtained during the investigation revealed that: (a) an IP Address ending in 17.5 (the "17.5 IP Address") was used to access Bank Account-1 on three occasions on July 15, 2023; and (b) on July 15, 2023, the 17.5 IP Address was assigned to HART for a location in New Jersey.

5. Records obtained from a search of an iCloud account subscribed to by HART (the "HART iCloud Account") included an image of a Google search for the payee listed on Check-1.

6. Records obtained during the investigation also revealed that HART sent numerous messages to another person ("Conspirator-1") on July 15, 2023, wherein HART stated, in substance and in part, that he was committing fraud with treasury checks, including as recently as July 14, 2023. HART also sent Conspirator-1 an image of an online bank balance for Bank Account-1.

7. A representative of the payee for Check-1 stated, in substance and in part, that the payee: (a) made a filing with Government that caused the issuance of Check-1; (b) never received Check-1; (c) never opened Bank Account-1; and (d) did not deposit Check-1 into Bank Account-1.

**TREASURY CHECK-2**

8. On or about May 26, 2023, checking and savings accounts ("Bank Account-2") were opened at Bank-1. On that same date a United States Treasury Check in the amount of $85,142.93 ("Check-2") was deposited into Bank Account-2. In addition, an approximate $25 opening deposit was made into Bank Account-2 on that same date. No additional funds were deposited into Bank Account-2 prior to the close of business on June 15, 2023.

9. Between May 26, 2023, and on or about June 15, 2023, approximately $91,000 was withdrawn from Bank Account-2. Approximately $13,000 of the withdrawals were done through the HART Cash App Account.

10. Records obtained during the investigation reveal that: (a) the 17.5 IP Address was used to access Bank Account-2 on numerous occasions between on or about June 3, 2023 and on or about June 21, 2023; and (b) during this time, the 17.5 IP Address was assigned to HART.

11. Records obtained from a search of the HART iCloud Account revealed:

   a. two images of a bank card in the name of an individual who was listed as a member of the payee entity on Check-2 and whose name Bank Account-2 was opened under ("Individual-1"); and

   b. numerous images of online bank balances for Bank Account-2.

12. Individual-1 stated, in substance and in part, that the payee: (a) made a filing with the Government that caused the issuance of Check-2; (b) never received Check-2; (c) never opened Bank Account-2; and (d) did not deposit Check-2 into Bank Account-2.

**TREASURY CHECKS-3-8**

13.     On or about April 14, 2023, a bank account held at Bank-1 ("Bank Account-3") was opened. On that same date, a United States Treasury Check in the amount of $10,289.00 ("Check-3") was deposited into Bank Account-3. In addition, an approximate $10 deposit was made into Bank Account-3 on that date.

14.     A review of Bank-1's records revealed that between on or about April 24, 2023 and on or about May 18, 2023, five additional United States Treasury Checks "(Checks 4-8"), totaling approximately $60,000, were deposited into Bank Account-3. No additional deposits were made into Bank Account-3.

15.     Between April 14, 2023, and on or about May 22, 2023, approximately $51,000 was withdrawn from Bank Account-3.

16.     Records obtained during the investigation reveal that: (a) the 17.5 IP Address was used to access Bank Account-3 on numerous occasions between on or about April 16, 2023 and on or about May 22, 2023; and (b) during this time, the 17.5 IP Address was assigned to HART.

17.     Records obtained from a search of the HART iCloud Account revealed:

  a. images of four of the above-referenced United States Treasury Checks deposited into Bank Account-3;

  b. a video that includes what appears to be a fraudulent driver's license in the name of a payee on one of the above-referenced United States Treasury Checks deposited into Bank Account-3.

**TREASURY CHECKS 9-11**

18.     On or about April 28, 2023, a bank account held at Bank-1 ("Bank Account-4") was opened. On that same date, a United States Treasury Check in the amount of $3,113.00 ("Check-9") was deposited into Bank Account-4. In addition, an approximate $60 deposit was made into Bank Account-4 on that date.

19.     A review of Bank-1's records revealed that between on or about May 1, 2023 and on or about May 8, 2023, two additional United States Treasury Checks, totaling approximately $33,000, were deposited into Bank Account-4. No additional deposits were made into Bank Account-4.

20. Between April 28, 2023, and on or about May 11, 2023, approximately $16,000 was withdrawn from Bank Account-4.

21. Records obtained during the investigation reveal that: (a) the 17.5 IP Address was used to access Bank Account-4 on numerous occasions between on or about April 29, 2023 and on or about May 15, 2023; and (b) during this time the 17.5 IP Address was assigned to HART.

22. Records obtained from a search of the HART iCloud Account revealed:

    a. images of the three United States Treasury Checks deposited into Bank Account-4;

    b. a video that includes what appears to be a fraudulent driver's license in the name of a payee on Check-9, which name was also used to open Bank Account-4;

    c. images of a bank card in the name of the person used to open Bank Account-4.

    d. an image of the online bank account balance for Bank Account-4.

**TREASURY CHECK 12**

23. On or about June 13, 2023, a bank account held at Bank-1 ("Bank Account-5") was opened. On that same date, a United States Treasury Check in the amount of $35,109.41 ("Check-12") was deposited into Bank Account-5. In addition, an approximate $60 deposit was made into Bank Account-5 on that date.

24. A review of Bank-1's records revealed that between on or about June 16, 2023 and on or about June 21, 2023, two checks written on Bank Account-5 totaling approximately $34,000, were deposited into Bank Account-2. Prior to the June 16, 2023, deposit, Bank Account-2 had a negative balance.

25. From on or about June 21, 2023, through on or about June 22, 2023, approximately $5,000 was withdrawn from Bank Account-2 through the HART Cash App Account. Records obtained from the mobile application company that maintained the HART Cash App Account demonstrate that: (a) the transfers were initiated using the 17.5 IP Address, which was assigned to HART at that time; and (b) the mobile application company's servers were not located in New Jersey at the time of the transactions.

26. Records obtained during the investigation reveal that: (a) the 17.5 IP Address was used to access Bank Account-5 on or about June 29, 2023; and (b) at the time of the access, the 17.5 IP Address was assigned to HART.

## FRAUDULENT EMPLOYMENT TAX RETURNS AND REFUNDS

27. Between on or about April 23, 2021 and on or about May 17, 2022, approximately nine Form 941s were filed on behalf of a business ("Business 1"). The Form 941s sought a total of more than $1,000,000 in refunds. The Internal Revenue Service ("IRS") issued numerous refund checks totaling more than approximately $500,000 in response to the nine Form 941s.

28. All of the Form 941s contained the same person's name ("Individual-2"). In addition, records obtained during the investigation revealed that two of the IRS refund checks were deposited into bank accounts that were each opened under Business-1's name.

29. Records obtained during the investigation further revealed that HART used Telegram to communicate with Conspirator-1. For instance, on or about April 23, 2021, HART messaged Conspirator-1 that he had "a vibe right now wit [sic] business taxes". Later that day, Conspirator-1 sent HART a message that included the name and other pertinent information for Business-1 and Individual-2. That same day, HART sent numerous messages to Conspirator-1, including one stating that Conspirator-1 "Should get 5 checks in the mail" and one that read "277,939".

30. The investigation has revealed that: (a) the first five of the nine Form 941s discussed above were submitted on or about April 23, 2021; (b) the address used in connection with the first five Form 941s was associated with Conspirator-1; and (c) the first five Form 941s sought $277,939.55 in refunds.

31. The investigation also revealed that the remaining four Form 941s listed an address for a location in Hackensack, New Jersey. Records obtained during the investigation revealed that HART owned a business at that location.

32. A search the HART iCloud Account revealed:

   a. Images of envelopes from the United States Department of the Treasury addressed to Business-1, which appeared to contain Government issued checks payable to the order of Business-1.

   b. An image of a fraudulent New Jersey Driver's License in Individual-2's name, but with a picture of a person that is not Individual-2.

      c. An image of a correspondence from the IRS to Business-1 stating that, based off a submitted Form 941, Business-1 was due a refund of $229,202.57.

      d. An image of a United States Treasury check issued to Business-1 in response to one of the Form 941s discussed previously.

      e. Images of the Articles of Organization for Business-1.

      f. An image of the IRS assignment of EIN document for Business-1.

33. The investigation has revealed that, with the exception of approximately $9,000, the IRS refund checks were either not cashed or the deposited funds were frozen. Bank records demonstrate that approximately $500 of the $9,000 was withdrawn using the HART Cash App Account.

34. Law enforcement has spoken to Individual-2 who stated, in substance and in part, that Individual-2: (a) was unaware of Business-1 until he was advised that his identity had been stolen; (b) never filed or caused to be filed the nine Form 941s; and (c) never opened or caused to be opened the bank accounts in Business-1's name.